**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
STEVEN GEIGER,                     :
                                   :   Civil Action No. 10-5458 (JEI)
            Petitioner,            :
                                   :
     v.                            :   **OPINION**
                                   :
KAREN BALICKI,                     :
                                   :
            Respondent.            :
_____:

**APPEARANCES:**

    **STEVEN GEIGER**, Petitioner <u>Pro</u> <u>Se</u>
    #248317/128254B
    South Woods State Prison
    215 Burlington Road South
    Bridgeton, NJ 08302

    **JASON SAMUEL POSTELNIK**, Attorney for Respondent Balicki
    State of New Jersey
    Division of Law
    Department of Law & Public Safety
    25 Market Street
    P.O. Box 112
    Trenton, NJ 08625

    **JOSEPH H. ENOS, JR.,** Attorney for Respondent Balicki
    Gloucester County Prosecutor's Office
    Euclid and Hunter Streets
    P.O. Box 623
    Woodbury, NJ 08096

**IRENAS**, District Judge

    This matter is before the Court on Steven Geiger's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in

1

which he is challenging his 1992 New Jersey state court conviction and sentence. For reasons discussed below, the Court will dismiss the petition without prejudice for lack of jurisdiction.

## I. FACTUAL BACKGROUND

The following factual background is taken from this Court's opinion addressing Petitioner Steven Geiger's first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. See Geiger v. Morton, 95-9290 (JEI), 1996 WL 361474 (D.N.J. June 24, 1996).

> In March of 1990, Steven P. Geiger ("Petitioner"), along with his paramour Ellen Frederick and their two children, was residing with Karen Lott Roe[1] in the Inverness Apartments in Deptford Township. On the evening of March 3, 1990, Roe drove Petitioner to the Blackwood home of his friend Clifford Thomas ("decedent") at approximately 6:00 p.m. She then returned to her home in Deptford before going out to dinner. When Roe returned to her home after dinner around 10:00 p.m., Frederick informed her that Petitioner had called to request that Roe come to decedent's apartment. In response, Roe drove to decedent's home, where she arrived between 10:30 p.m. and 10:45 p.m. to find Petitioner and decedent drinking beer and "horsing around."
>
> At 11:30 p.m., Petitioner, decedent, and Roe left decedent's apartment after Petitioner suggested that they go to a bar. They stopped at a convenience store to get sandwiches, and then returned briefly to Roe's apartment. Upon arriving at Roe's home, Petitioner began yelling at Frederick that he wanted money to go out to a bar. Roe suggested that they not go out because Petitioner was intoxicated, but Petitioner

---

[1] Roe, who was known as Karen Lott at the time of the incident, is the cousin of Ellen Frederick.

became angry and accused Roe and decedent of trying to "ditch him." After hearing his repeated demands, Roe and decedent agreed to go to a bar with Petitioner.

Roe, Petitioner, and decedent went to a bar in Mantua called Spuds and Suds at approximately midnight. They shared a pitcher of beer, and each of them consumed a shot of hard liquor. After they were in the bar for roughly thirty minutes, decedent expressed his desire to go home because he had to work in the morning. Petitioner angrily and loudly repeated his intention to continue partying, along with his suspicion that decedent and Roe were trying to abandon him. As the three were leaving the bar, they continued to argue about whether to go home. Petitioner instructed Roe to let him out at Three Points Cafe, a bar within walking distance of Roe's home. When Roe stopped there, however, Petitioner did not get out of the car, but instead continued to yell that Roe and decedent were deserting him. Roe then drove back to her apartment, with the intention of dropping off Petitioner before transporting decedent back to his home.

When they arrived at Roe's apartment, Roe and Petitioner entered the building, with the decedent following behind them. Petitioner continued to yell that Roe and decedent wanted to leave him so that they could be alone together. Frederick, who had stayed home that night, opened the door of the apartment, and Roe informed her that Petitioner was drunk and obnoxious. After Petitioner continued shouting, Roe told Frederick that she wanted Petitioner to move out of her apartment the following day. Petitioner then took off his jacket and his shirt, and in attempting to strike decedent, struck Roe on the side of the face. Roe pushed Petitioner into a chair, and Petitioner's anger increased. Petitioner argued briefly with decedent, hit him in the face, and received a return blow from decedent. Roe told decedent to exit the apartment, and to wait for her outside. As decedent proceeded toward the doorway, Petitioner ran into the kitchen and grabbed a butcher block containing several knives. Petitioner dropped the block, retaining a butcher knife in his right hand and a smaller knife in his left hand. Decedent had reached the landing outside of Roe's

3

apartment when Petitioner charged at him with a knife in each hand, hollering "I'm going to kill you," and making noises "like a grizzly bear." Petitioner stabbed decedent with both knives.[2] He then backed away from decedent, dropped the butcher knife, and re-entered Roe's apartment.

Decedent, injured badly, stumbled down the stairs in an effort to reach Roe's car so that she could take him to the hospital. Roe followed to assist him, but he fell on top of her, unable to stand again. Petitioner, still bare-chested, came down the stairs and asked if he could help. Roe responded, "you've done enough damage," and Petitioner again went up to Roe's apartment. Decedent then allegedly said to Roe, "I know he didn't mean to do it." After a neighbor came down with a blanket, Petitioner descended from Roe's apartment, now wearing a shirt and a jacket. He paused momentarily, then ran towards the woods behind the apartment complex. Emergency service personnel arrived on the scene shortly thereafter. Decedent was taken to a hospital, where he died from a stab wound that had pierced his heart.

Petitioner's whereabouts and activities after the stabbing remain in question. Two days following the incident, Petitioner called Roe, who informed him that he had killed the decedent. Petitioner told Roe that he was in Vineland, but when pressed for a more specific location, hung up the phone. Petitioner later vaguely recalled staying in Philadelphia with a friend known only as "Vince," but was unable to provide further detail. On March 13, Petitioner called William Frederick[3] and informed him of his intention to turn himself in. Mr. Frederick met Petitioner at an appointed location in Philadelphia and transported Petitioner to the Deptford police station, where he surrendered.

---

[2] Forensic pathologist Dr. Clause Speth testified that he found two entrance stab wounds on the left side of decedent's chest.

[3] William Frederick is the father of Ellen, Petitioner's paramour. Mr. Frederick was a Philadelphia police officer at the time, and Petitioner apparently contacted Mr. Frederick to assist in turning himself in.

4

(Internal citations omitted).

## II.  PROCEDURAL BACKGROUND

According to the allegations contained in the instant petition, Petitioner was convicted by jury trial on or about October 1, 1992, in the Superior Court of New Jersey, Gloucester County on a count of murder and multiple counts of aggravated assault and weapons charges.  On November 6, 1992, Petitioner was sentenced to thirty years without the possibility of parole pursuant to N.J.S.A. 2C:11-3(b).

Petitioner filed a direct appeal from his conviction and sentence to the Superior Court of New Jersey, Appellate Division. On April 10, 1995, the Appellate Division affirmed the conviction.  The Supreme Court of New Jersey denied certification on June 7, 1995.  Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States.

Though he did not disclose such in the instant petition, on October 11, 1995, Petitioner filed his first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court. Geiger v. Morton, 95-9290 (JEI), 1996 WL 361474 (D.N.J. June 24, 1996).  In that petition, Petitioner sought relief on the following grounds: (1) that the trial court denied him due process in failing to allow a defense of pathological

intoxication; (2) that comments made by venirepersons tainted the jury and deprived him of his Sixth Amendment right to an impartial jury; (3) that the prosecutor's comments regarding an expert witness constituted misconduct that violated his Sixth Amendment right to a fair trial; and (4) that he was deprived of his Sixth Amendment right to effective assistance of counsel. Geiger, 1996 WL 361474 at *4.

This Court denied Petitioner's request for habeas relief because he did not present evidence demonstrating violations of his constitutional rights. Id. Petitioner filed a notice of appeal and on September 13, 1996, the Third Circuit denied Petitioner's request for a certificate of appealability. Geiger v. Morton, 95-9290 (JEI), Docket Entry No. 10.

On January 9, 2004, Petitioner filed a petition for post-conviction relief ("PCR"), pro se, in the Superior Court of New Jersey, Law Division, Gloucester County. He raised three points: (1) appellate counsel rendered ineffective assistance in failing to raise on appeal the State's improper direct examination of the investigating detective who improperly commented on the defendant's post-arrest silence and the Court's failure to charge and/or improper charge to the jury; (2) the retroactive cancellation of defendant's work and minimum credits, after they were already entered on his official classification records

6

violates the New Jersey and United States Constitutions; and (3) the five year time bar should be relaxed because imposition would result in manifest injustice, denial of constitutional rights and the inability to correct an illegal sentence.  On December 15, 2006, the Superior Court denied the PCR petition.  On September 25, 2009, the Appellate Division affirmed the Superior Court's denial of PCR.  On January 14, 2010, the New Jersey Supreme Court denied certification.

Petitioner filed this federal habeas petition on October 14, 2010.  In his petition, Petitioner raises the following claims: (1) the retroactive cancellation of Petitioner's work and commutation credits, or cash award for the same after the credits were entered on his official classification records, violates the constitutions of New Jersey and the United States; and (2) appellate counsel "rendered ineffective assistance in failing to raise improper direct examination of the investigating detective and improper comments on defendant's post-arrest silence and the courts failure to charge and/or improper chrage [sic] to the jury."

On February 2, 2011, this Court entered an opinion and order requiring Petitioner to show cause why the petition should not be dismissed as time-barred.  (Dkt. Nos. 2 & 3).  In his response, Petitioner argued that it was not until May 8, 2001, when the New

7

Jersey Supreme Court finalized its decision in <u>Sheena Perry v. Department of Corrections</u>,(A5019-99T5), that he would have been able to raise the issue now raised in his habeas petition regarding credits.  (Docket Entry No. 4.)  He did not provide any reason why his other ground for relief should not be considered time-barred.

On June 21, 2011, the New Jersey Attorney General's Office provided a limited response to Petitioner's submission on behalf of Respondent.  (Docket Entry No. 10.)  Respondent argues that Petitioner's request for compensation for work and minimum credits falls outside the scope of habeas petitions and should instead be brought in a civil action.  On July 13, 2011, Petitioner responded to the Attorney General's submission, but did not appear to challenge the argument that his request for compensation is not properly brought in an habeas action; rather, he requests that "this Court determine definitively, how and in what jurisdiction, whether it is a court, agency or State Department from which he is to obtain relief."  (Docket Entry No. 12.)

On July 12, 2011, the Gloucester County Prosecutor's Office also filed a limited response to Petitioner's submission on behalf of Respondent. (Docket Entry No. 11.)  In this submission, Respondent argues that Petitioner has already filed a previous

8

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was decided by this Court and Petitioner failed to disclose. Respondent further argues that even disregarding the first petition, the time for Petitioner to file a 2254 petition has long since expired. In addition, Respondent notes that Petitioner did not provide any reason why he failed to raise the issues contained in ground two until the instant petition.

On July 18, 2011, Petitioner filed a response to the County Prosecutor's submission. (Docket Entry No. 14.) He states that he did not intend to mislead the Court and it was an error to state that he did not file any previous federal remedies. Petitioner states that he could not file his petition for PCR until the "impediment" was removed, however he fails to identify to what "impediment" he is referring.

### III. DISCUSSION

**A. Legal Standard**

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney

General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969).

**B. Legal Analysis**

**1. Ground One: Cash for Work Credits**

On this ground, Petitioner "concedes that there is no violation of his constitutional rights where the New Jersey legislature and state judicial branch declared his commutation, work and minimum credits are not applicable to the reduction of his sentence." He further states that he "does not expect to have his sentence reduced by the New Jersey Statute qualifying other inmates for reduction of their overall maximum sentence. It is understood that N.J.S.A. 30:3-140...does not apply to him; i.e. he will not benefit from any accumulated 'commutation credits' awarded by good behavior; however, it is agued [sic] and supported that Petitioner should be receiving monetary compensation for the 'work credits' earned while employed."

Petitioner bases his argument on N.J.S.A. 30:4-92 which states:

> The inmates of all correctional and charitable, hospital, relief and training institutions within the jurisdiction of the State Board shall be employed in such productive occupations as are consistent with their health, strength and mental capacity and shall receive such compensation therefor as the State Board shall determine.

> Compensation for inmates of correctional institutions may be in the form of cash or remission of time from sentence or both. Such remission from the time of sentence shall not exceed one day for each five days of productive occupation, but remission granted under this section shall in no way affect deductions for good behavior or provided by law...

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973); see also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005). In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action. See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein; see also Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 237 (3d Cir. 2005) (challenge to regulations limiting pre-release transfer to community corrections centers properly brought in habeas); Macia v. Williamson, 2007 WL 748663 (3d Cir. 2007) (finding habeas jurisdiction in challenge to disciplinary hearing that resulted in sanctions including loss of good-time credits, disciplinary segregation, and disciplinary transfer).

The Court of Appeals has noted, however, that "the precise meaning of 'execution of the sentence' is hazy." Woodall, 432 F.3d at 237. To the extent a prisoner challenges his conditions of confinement, such claims must be raised by way of a civil

11

rights action.  See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002); see also Ganim v. Federal Bureau of Prisons, 2007 WL 1539942 (3d Cir. 2007) (challenge to garden-variety transfer not cognizable in habeas); Castillo v. FBOP FCI Fort Dix, 2007 WL 1031279 (3d Cir. 2007) (habeas is proper vehicle to challenge disciplinary proceeding resulting in loss of good-time credits, but claims regarding sanctioned loss of phone and visitation privileges not cognizable in habeas).

Here, Petitioner's challenge to Respondent's failure to award him cash in exchange for his work credits does not appear to challenge the "fact or duration" of his confinement.  In fact, Petitioner states several times that he is aware that he cannot be awarded credits that would shorten his sentence to anything less than the mandatory minimum.  Rather, he is only seeking to receive cash for his work credits.  Therefore, because this Court lacks jurisdiction in habeas to hear Petitioner's challenge to cash for work credits, the claim will be dismissed without prejudice.

Since Petitioner has not prepaid the $350.00 filing fee, and because of the consequences that flow from a grant of leave to proceed in forma pauperis in a civil rights action or from the dismissal of a civil rights action, this Court will not construe this matter as a civil rights complaint.  See 28 U.S.C.

§ 1915(g). Instead, this claim will be dismissed and the Clerk of the Court will be directed to open a new, civil action. Petitioner will be granted leave to advise the Court whether he wishes to proceed with this claim as a civil action.

This Court expresses no opinion as to the merits of Petitioner's claim.

## 2. GROUND TWO: Ineffective Assistance of Appellate Counsel

In Ground Two of his petition, Petitioner argues that: appellate counsel "rendered ineffective assistance in failing to raise improper direct examination of the investigating detective and improper comments on defendant's post-arrest silence and the courts failure to charge and/or improper chrage [sic] to the jury."

As stated above, this is Petitioner's second 2254 petition challenging the same conviction. Therefore, the Court must determine if the petition is "second or successive" and as such, whether the Court lacks jurisdiction to entertain the petition unless Petitioner has sought and obtained an order from the Third Circuit permitting said petition.

28 U.S.C. § 2244(b), which is a provision contained within the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") states that:

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless–

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection...

Before the enactment of AEDPA, courts "employed a collection of equitable principles known as the 'abuse of the writ' doctrine

14

to determine when a petition would be deemed abusive and thus barred from consideration on its merits." Benchoff v. Colleran, 404 F.3d 812, 816 (3d Cir. 2005) (internal citations omitted). "Under this doctrine, a petition would be considered an abuse of the writ, inter alia, where the subsequent petition raised a habeas claim which could have been raised in an earlier petition and there was no legitimate excuse for failure to do so." Id. (citing McCleskey v. Zant, 499 U.S. 467, 493-95, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)).

The Third Circuit has held that, notwithstanding the passage of AEDPA, "the abuse of the writ doctrine retains viability as a means of determining when a petition should be deemed 'second or successive' under the statute." Id. at 817. Therefore, "a prisoner's application is not second or successive simply because it follows an earlier federal petition...The doctrine does, however, bar claims that could have been raised in an earlier habeas corpus petition." Id. (citing McCleskey, 499 U.S. at 493-95, 111 S.Ct. 1454; Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir.1992)). Courts are in agreement that, where an initial federal petition has been denied on the merits, a subsequent petition attacking the same judgment is "second or successive" within the meaning of § 2244. See Luckett v. McDaniel, 213 F.3d 642 (9th Cir. 2000) (unpubl.); In re Page, 170 F.3d 659 (7th Cir.

15

1999); Dunn v. Singletary, 168 F.3d 440 (11th Cir. 1999); Corrao v. United States, 152 F.3d 188, 191 (2d Cir. 1998); U.S. v. Salemo, 2006 WL 1409743 (E.D.Pa. 2006); Wilson v. York County Common Pleas Court, 2005 WL 1229719 (M.D.Pa. 2005); Leonard v. Dretke, 2004 WL 741286 (N.D.Tex. 2004); Paskins v. Carroll, 2002 WL 1268048 (D.Del. 2002).

In this case, Petitioner knew in 1995 when he filed his first § 2254 petition in this Court that appellate counsel allegedly rendered ineffective assistance.  Further, this Court reached a decision on the merits of his first petition.  Thus, this claim, which could have been included in Petitioner's first § 2254 petition filed in October 1995, is therefore appropriately considered "second or successive."

Since the petition is considered "second or successive", Petitioner was required to move before the Third Circuit for an order authorizing this Court to consider the application.[4] Petitioner has failed to do so.  If a "second or successive" habeas petition is filed in the district court without authorization from the appropriate court of appeals, the district

---

[4] The Third Circuit has held that "[b]ecause AEDPA...calls for the application of § 2244(b)(3)(A) to cases filed after April 24, 1996, and because it is a rule of procedure that does not 'attach new legal consequences to events completed before its enactment,' petitioners...must seek permission of a Court of Appeals prior to proceeding on a second petition, even if their first petition was filed before the Act was adopted."  In re Minarik, 166 F.3d 591 (3d Cir. 1999).

16

court may dismiss for lack of jurisdiction or transfer the petition to the court of appeals pursuant to 28 U.S.C. § 1631. See Robinson v. Johnson, 313 F.3d 128, 139 (3d Cir. 2002). However, because § 2244(b) is effectively "an allocation of subject-matter jurisdiction to the court of appeals," Robinson, 313 F.3d at 140 (quoting Nunez v. United States, 96 F.3d 990, 991 (7th Cir. 1996)), a district court may dismiss such a petition only without prejudice. See Ray v. Eyster, 132 F.3d 152, 155-56 (3d Cir. 1997).

Accordingly, this Court must determine whether transfer of this Petition to the Court of Appeals, for consideration as an application for leave to file a "second or successive" petition, would be in the interest of justice. Petitioner does not provide the Court with any reason why this claim could not have been presented in the first petition. He does not allege that the claim relies on a new rule of constitutional law that has been made retroactive or new facts that could not have been discovered previously through the exercise of due diligence. He makes vague reference to an "impediment" that had to be removed, but he does not provide any further information.

Accordingly, it would not be in the interest of justice to transfer this Petition. This Court will dismiss the petition for lack of jurisdiction rather than transfer it. The dismissal will

be without prejudice to Petitioner's filing an application under § 2244(b)(3) in the Court of Appeals.[5]

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying

---

[5] The Court also notes that even if Petitioner had not already filed a previous § 2254 petition, his petition would still be dismissed as time-barred. Petitioner was convicted in 1992 and that state court conviction became final in 1995, before the enactment of AEDPA on April 24, 1996. Therefore, Petitioner had until April 23, 1997 to bring his federal habeas petition under § 2254. To permit tolling of the one-year limitations period under 28 U.S.C. § 2244(d)(2), Petitioner would have had to file his state PCR petition before the one-year period had expired, or before April 23, 1997. Otherwise, the state PCR petition would not serve to toll the statute of limitations. In this case, Petitioner filed his state PCR petition on January 9, 2004, well after the statutory period had run pursuant to 28 U.S.C. § 2244(d)(1), without any tolling as permitted under § 2244(d)(2). Petitioner did not file the instant habeas petition until October 14, 2010, approximately thirteen years after the one year period had expired. Despite being given an opportunity to do so, Petitioner has failed to provide any reason why equitable tolling should apply. As such, this petition would also be dismissed as time-barred.

18

constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find it debatable whether this Court is correct in its procedural ruling.  No certificate of appealability shall issue.

## V. CONCLUSION

For the above-stated reasons, Ground One of the petition is hereby dismissed without prejudice.  A civil action shall be opened and Petitioner will be granted leave to inform this Court whether he wishes to proceed with said action.  Ground Two of the petition is also dismissed without prejudice as second or successive.  An appropriate order follows.


Dated: 10/11/11


                                              /s/ Joseph E. Irenas    
                                            JOSEPH E. IRENAS  
                                            United States District Judge